IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00624-WCM

LISA RENEA MOOD, )
)
                Plaintiff, )
) MEMORANDUM OPINION
v. ) AND ORDER
)
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
                Defendant. )
_____ )

This matter is before the Court on the parties' social security briefs (Docs. 11, 13).[1]

## I. Procedural Background

In August of 2020, Plaintiff Lisa Renea Mood ("Plaintiff") filed applications for disability insurance benefits and supplemental security income. Transcript of the Administrative Record ("AR") 215-216; 217-226. Plaintiff alleges disability beginning December 10, 2020. See AR 48.[2]

On April 28, 2022, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an

---

[1] The parties have consented to the disposition of this case by a United States Magistrate Judge. Docs. 9, 10.

[2] In her applications, Plaintiff alleged disability beginning on December 12, 2019, but later amended her disability onset date to December 10, 2020.

1

unfavorable decision. AR 17-43. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "heart failure; peripheral neuropathy; essential hypertension; acute myocardial infarction; and obesity." AR 23. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work… except: can occasionally climb ramps and stairs; never climb, ladders, ropes, or scaffolds; occasional hazards such as moving mechanical parts or unprotected heights; frequently handle, finger, and feel; and frequent foot control operations.

AR 25.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 38-39.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ erred when considering Plaintiff's statements regarding the severity of her impairments and by failing to adopt a limitation found in the opinion evidence.

2

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff

3

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

When evaluating the intensity, persistence and limiting effects of a claimant's alleged symptoms, the regulations provide that an ALJ may consider factors such as the individual's medical history, treatment history, and daily activities. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

With respect to a claimant's treatment history, "[t]he law is well settled in this circuit that 'a claimant may not be penalized for failing to seek treatment she cannot afford' because 'it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" Threatt v. Colvin, No. 2016 WL 7410559, 2016 WL 7410559, at *4 (D.S.C. Dec. 22, 2016 (quoting Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)); see also Breeden v. Astrue, No. 5:10–cv–44, 2010 WL 5313291, at *1 n. 1 (W.D.Va. Dec. 17, 2010) (absent evidence to the contrary, a claimant's failure to seek healthcare that she cannot afford "cannot be considered as a reason for den[ying]" her disability benefits); accord Wooten v. Shalala, No. 92–1636, 1993 WL 269267, at *4 (4th Cir. Jul.

4

16, 1993) (noting that Lovejoy did not control where the claimant had access to free healthcare and it was "not clear from the record that [the claimant] could not afford medical treatment").

Here, Plaintiff argues that remand is appropriate because the ALJ cited Plaintiff's non-compliance with treatment recommendations as a reason to discount Plaintiff's alleged symptoms but did not consider Plaintiff's ability to pay for such treatment. In support of this argument, Plaintiff points to various medical records concerning her inability to afford treatment. See Doc. 11 at 14 (citing AR 318 (Plaintiff reported she was unable to afford medication and requested samples); 486 (reflecting Plaintiff's statement that she needs help paying for medication); 316 (indicating Plaintiff had not had blood pressure medication for two months due to financial issues); 1108 (noting that, in approximately November 2018, it was recommended that Plaintiff have a follow-up evaluation with a cardiologist, but that follow-up was not pursued due to lack of medical insurance)).

In developing Plaintiff's RFC, the ALJ referenced certain medical records which reflect that Plaintiff was not taking prescribed medications or following other treatment recommendations, and that Plaintiff had expressed concern regarding her financial condition. See e.g., AR 28 (citing AR 1142 (noting Plaintiff's hypertension was "not well controlled as she has not been on her medication"); AR 30-31 (citing AR 322 (Kintegra Family Medicine

5

treatment note where Plaintiff reported stress regarding her financial condition because she was "unable to work due to pain," and admitted her "lack of health management" as she had not "followed up regularly with PCP/specialist, poor medication compliance, etc."); AR 315-316 (Kintegra Family Medicine treatment note reflecting that Plaintiff had high blood pressure and had not had any of her medications for 2 months "due to financial issues")); AR 32 (citing AR 1108 (noting that although follow up with a treating cardiologist was recommended, Plaintiff did not do so due to lack of medical insurance)); AR 34 (citing AR 1406 (August 24, 2021 discharge exam indicating Plaintiff was to follow up with her PCP within a week) and stating that there were no subsequent treatment records indicating Plaintiff did so).

Plaintiff's treatment noncompliance was one of multiple factors the ALJ considered when discussing the credibility of Plaintiff's statements regarding her symptoms. See AR 36 (discussing activities of daily living and treatment records showing generally normal findings); see also Michael C. v. Kijakazi, No. 22-0029-BAH, 2022 WL 13945281, at * 5 (D.Md. Oct. 24, 2022) ("Some courts have found no error where…'non-compliance was merely one of a number of factors the ALJ considered in determining that [the claimant's] testimony about her symptoms was only partially credible'") (quoting Dunn v. Colvin, 607 Fed. Appx. 264, 276 (4th Cir. 2015) (unpubl.) and collecting cases).

Additionally, certain records cited by the ALJ indicate that Plaintiff

failed to comply with treatment recommendations that may not have required any payment at all. AR 28 (citing 1142 (noting plaintiff was still smoking)); AR 20 (citing AR 438 (regarding September 2019 hospitalization where it was noted that Plaintiff was last seen at that facility in June 2019 and had been discharged home, but did not follow up with cardiology services and did not "observe fluid restrictions")); AR 34 (citing AR 1406 (August 24, 2021 discharge summary reflecting that Plaintiff continued to be counseled on smoking cessation)).

Further, it appears that Plaintiff continued to smoke and drink, notwithstanding concerns she may have had regarding the cost of medications. See AR 1142, 1406, AR 1109 (noting Plaintiff began smoking in 2017, smokes one to two cigarettes daily, and admitted to "light wine consumption"); see also Hill v. Colvin, No. 7:14-cv-171-D, 2015 WL 5147604, at *6 (E.D.N.C. Aug. 10, 2015) ("A claimant's use of income to purchase cigarettes can undercut his allegations that he is unable to afford treatment"); Thompson v. Colvin, No. 7:15CV26, 2016 WL 1069654, at *3 (E.D.N.C. Mar. 16, 2016) (finding no error in ALJ's consideration of the plaintiff's ongoing cigarette purchases despite claiming an inability to afford medication).

On the other hand, the ALJ did not explicitly discuss Plaintiff's ability to afford recommended treatments even though he referenced her noncompliance. See AR 36. See Michael C., 2022 WL 13945281, at * 5 (D.Md.

Oct. 24, 2022) (explaining that some courts "have held that an ALJ is required to develop the record as to whether a claimant's lack of resources contributed to the failure to seek or maintain care when the ALJ bases *any part* of a denial of disability benefits on a failure to seek or maintain care") (emphasis added) (collecting cases); see also Keller v. Berryhill, 754 Fed. Appx. 193, 200 (4th Cir. 2018) (unpubl.) (per curiam) (Wynn, J., concurring) ("Under SSR 96–7p and Lovejoy, the ALJ was required to inquire into [plaintiff's] inability to pay before relying on her noncompliance in the credibility finding. It may well be that [plaintiff's] testimony may not be found fully credible regarding her inability to pay, but the ALJ erred by failing to evaluate [plaintiff's] inability to pay on the record, in order to gauge whether this justified noncompliance").

Under these circumstances, and although this case presents a close call, the undersigned concludes that remand is appropriate.[3]

---

[3] Because this matter is being remanded on this basis, the undersigned does not reach Plaintiff's other arguments in favor of remand.

## VI. Conclusion

For the reasons stated above, this matter is **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order.

Signed: January 4, 2024

W. Carleton Metcalf
United States Magistrate Judge